UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 15-22959-CIV-MARTINEZ-GOODMAN**

MARSHALL MAOR, individually and on
behalf of all others similarly situated,

      Plaintiff,

vs.

DOLLAR THRIFTY AUTOMOTIVE GROUP,
INC. (d/b/a DOLLAR RENT A CAR),
DOLLAR RENT A CAR, INC. and DTG
OPERATIONS, INC.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court on Defendants Dollar Thrifty Automotive Group, Inc. ("Dollar Thrifty"), Dollar Rent A Car, Inc. ("Dollar Rent A Car"), and DTG Operations, Inc.'s ("DTG") (collectively, "Defendants") Motion for Summary Judgment (the "Motion") [ECF No. 111]. The Court has reviewed the Motion, Plaintiff Marshall Maor's ("Plaintiff") Corrected Response in Opposition thereto [ECF No. 141], Defendants' Reply in further support [ECF No. 147], the record in this action and is otherwise fully advised of the premises. For the reasons stated below, the Court GRANTS Defendants' Motion for Summary Judgment.

### I. Background

#### a. Defendants' Electronic Toll Collection Program

This action arises out of Defendants' standard rental contract provision that provides for charging certain customers toll costs and an administrative fee per use of an electronic toll booth.

[ECF No. 1]. In essence, Plaintiff says that Defendants misrepresent the purpose and nature of the administrative fee that is charged to customers who decline to purchase a toll package at the time of rental and who incur a charge for an electronic toll during the rental period. *See* [ECF No. 140-1]. In 2008, Defendants implemented Electronic Toll Collection ("ETC") for its rental cars, allowing customers to use cashless toll systems. [ECF No. 1 ¶ 2]. At the time of rental, customers are given the option to purchase Defendants' toll package. Defendants' standard rental contract contains an express term requiring customers who decline to purchase the toll package to pay for any electronic tolls incurred, plus an administrative fee of $15 per occurrence. [*See id*. ¶¶ 2-3]. Defendants collect payment for these charges through a third party, and at the time of collection, the third party provides a Frequently Asked Questions document that describes why the customer was charged an administration fee: "[p]er your rental agreement, an administration fee was charged to cover the costs of processing your citation on behalf of the Rental Car Company." [*See id*. ¶¶ 3, 48].

### b. Facts Specific to Plaintiff's Rental Transaction with Defendants

On July 20, 2014, Plaintiff rented a car from Defendants at their Orlando International Airport location. [ECF Nos. 111-1 ¶ 1, 133 ¶ 1]. The rental period commenced on July 20, 2014 and concluded on July 29, 2014. [ECF No. 111-3 at 18:17-19]. Plaintiff does not recall everything from the transaction, but he does remember the counter agent explaining Defendants' optional toll package, which he voluntarily declined to purchase. [ECF No. 111-3 at 11:16-14:7]. Plaintiff further remembers that before signing the rental agreement, the counter agent showed him key information about the terms of his rental agreement on a display screen. This information included the terms and conditions of Defendants' optional toll package and the charge of a $15 administrative fee per each toll incurred if Plaintiff declined to purchase the toll

package and incurred any tolls. *Id.*; [ECF Nos. 111-1 ¶¶ 7-8, 133 ¶¶ 7-8]. Plaintiff signed the rental agreement, thereby assenting to comply with its terms. [ECF Nos. 111-1 ¶ 8; 111-3 at 16:4-16:19; 133 ¶ 8]. Plaintiff was provided a physical copy of his rental agreement by the counter agent, bearing his signature and initials. [ECF Nos. 111-1 ¶ 9; 111-3 at 16:17-19, 17:25-18:5; 133 ¶ 9]. Plaintiff's rental agreement incorporates additional terms in a separate rental jacket, which Plaintiff was also provided at the counter at the time of rental. [ECF Nos. 111-1 ¶¶ 10-11; 111-3 at 18:17-23:23; 133 ¶¶ 10-11]. Plaintiff admits that both the physical copy of his rental agreement and the rental jacket fully disclosed the $15 administrative fee.[1] [ECF Nos. 111-1 ¶¶ 11-14; 133 ¶¶ 11-14]. Plaintiff admits that he doesn't recall any conversation with the counter agent regarding the nature and/or purpose of the $15 administrative fee. [ECF Nos. 111-1 ¶ 20; 111-3 at 23:24-24:10; 133 ¶ 20]. Plaintiff further admits that the rental jacket includes that its terms "supersede any conflicting terms stated elsewhere" and that none of its terms "may be waived or changed except by a written agreement signed by [Dollar's representative]." [ECF Nos. 111-1 ¶ 15, 133 ¶ 15].

On July 21, 2014, Plaintiff drove on a toll road, incurring a toll totaling $1.37 in charges. Plaintiff did not pay the toll at that time, and returned the rental car to Defendants on July 29, 2014. [ECF Nos. 111-1 ¶¶ 23-25, 133 ¶¶ 23-25]. In August 2014, Defendants, through its third-party service provider, sent Plaintiff a "Dollar Rent A Car Toll Charge" ("toll notice"), informing him that Defendants were assessing a $15 administrative fee for the toll violation, resulting in a total obligation owed of $16.37. [ECF Nos. 111-1 ¶¶ 26-30; 133 ¶¶ 26-30, 132-2; ECF No. 132-2 (toll notice) ("Per your rental contract with Dollar Rent A Car, you are responsible for all fines,

---

[1] The rental agreement discloses a "$15 administrative fee for each toll incurred." [ECF Nos. 111-1 ¶ 12, 133 ¶ 12]. The incorporated rental jacket likewise discloses a "$15 administrative fee per toll" for any tolls incurred when Defendants' toll-package is declined at the time of rental. [ECF Nos. 111-1 ¶ 14, 133 ¶ 14].

penalties, and processing fees related to any and all tolls and violations. The toll amount plus a $15 administrative fee per toll has been assessed.")]. The toll notice included this explanation: "Frequently asked questions ("FAQs") and associated answers accompany this notice or can be found online."[2] [ECF No. 132-2]. The FAQs, in turn, provide: "Per your rental agreement, an administration fee was charged to cover the costs of processing your citation. Processing includes either transferring liability of the citation out of the Rental Car Company's name into your name or paying the citation…" [ECF Nos. 132-5, 132-6]. The FAQs were not referenced in the rental agreement/rental jacket, were not provided or available at the rental counter and were not referenced by the counter agent. Plaintiff paid the administrative fee.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1982).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."

---

[2] The parties dispute whether the FAQs accompanied the toll notice or whether Plaintiff was directed to view the FAQs online. As explained below, it's a distinction without a difference as neither the FAQ allegedly mailed to Plaintiff nor the Web FAQ are signed by Plaintiff or Defendants. [ECF Nos. 132-5, 132-6].

*Clark v. Coats & Clarks, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of [her] pleadings, but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. Analysis

Plaintiff brings three claims, all under Florida law: breach of contract (Count I); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II); and breach of the implied covenant of good faith and fair dealing (Count III). Defendants move for summary judgment on all counts. The Court will address each count, in turn.

### a. Count I – Breach of Contract

Defendants say this Court must grant them summary judgment because the parties' contract clearly and unambiguously discloses the $15 administrative fee and Plaintiff was charged the fee in accordance with its express terms. Plaintiff counters that the parties' rental contract also includes the toll notice and FAQs sent to Plaintiff in August 2014; accordingly, the rental contract represents that the administrative fee was used to cover processing costs for toll collections when in fact it was not used in that manner. By falsely describing the purpose of the administration fee, Defendants breached its contract with Plaintiff.

There is no dispute that Florida law governs the interpretation of the parties' rental contract. Under Florida law, the elements of a breach of contract claim are: "(1) the existence of

a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009) (applying Florida law). "Where the language of a contract is unambiguous and not subject to conflicting inferences, construction of the contract is a question of law for the court." *Tulepan v. Roberts,* 14- 80574, 2015 WL 235441, at *14 (S.D. Fla. Jan. 16, 2015) (applying Florida law). Here, the existence of a contract is not in dispute. Rather, the parties disagree as to: (1) what documents make the contract; and (2) the meaning of "administrative fee" within Defendants' contractual relationship with Plaintiff. Because it is clear that Plaintiff was charged the precise amount he agreed to under the contract according to the contract's express terms, Defendants' conduct fully complied with the terms of the contract and there can be no breach.

### i. The Rental Contract

All parties agree that the rental contract includes the rental agreement and rental jacket provided to Plaintiff by Defendants' counter agent at the time of rental on July 20, 2014.[3] For the reasons stated below, the Court finds that the rental contract consists of *only* those two documents: the rental agreement and the rental jacket provided to Plaintiff at the rental counter on July 20, 2014.

Plaintiff attempts to save his breach of contract claim by contending that the toll notice and FAQs sent to him were also part of the rental contract, but they are not. The toll notice and FAQs were first provided to Plaintiff after his rental car had been returned in Orlando, Florida and were mailed to his address in Bronx, New York in August 2014.[4] [ECF No. 132-2]. Neither the toll notice nor the FAQs are written agreements modifying the parties' rental contract as

---

[3] As previously noted, the rental jacket is made part of the contract by express reference by incorporation. [ECF Nos. 111-1 ¶ 10, 133 ¶ 10].
[4] The rental period commenced on July 20, 2014 and concluded on July 29, 2014 [ECF No. 111-3 at 18:17-19].

neither are signed by Plaintiff or an authorized representative of Defendants as required by the parties' contract. *See* [ECF Nos. 111-1 ¶ 15, 133 ¶ 15 (the terms found in the rental jacket "supersede any conflicting terms stated elsewhere" and none of the terms "may be waived or changed except by a written agreement by Defendants' authorized representative.")]. Moreover, a contract precluding modifications can only be changed where both parties *clearly and unequivocally* mutually agree to the modified terms, which is wholly lacking in this case. *See Energy Smart Indus., LLC v. Morning View Hotels-Beverly Hills, LLC*, 112 F.Supp.3d 1330, 1335 (S.D. Fla. 2015) (applying Florida law). Additionally, parol evidence is inadmissible to vary the terms of a valid and unambiguous contract. As the Court finds throughout, the parties' contract is both valid and unambiguous. *See Uranksy v. First Federal Sav. & Loan Ass'n of Fort Myers*, 684 F.2d 750, 754 (11th Cir. 1982) ("It is fundamental that parol evidence is inadmissible to vary or contradict the clear and unambiguous language of a contract…Courts are allowed to consider extrinsic evidence only when confronting an ambiguous contract provision, and they are barred from using evidence to create an ambiguity to rewrite a contractual provision, or to vary a party's obligation under a contract.")) (applying Florida law) (internal citations omitted); *see also Vocelle & Berg, LLP v. IMG Citrus, Inc.,* 125 So.3d 843, 844-45 (Fla. 4th DCA 2013); *Atkins v. Bianci*, 162 So.2d 694, 697 (Fla. 1st DCA 1964).

### ii. Meaning of Administrative Fee

With the documents of the contract established, the Court must next interpret the contract to give effect to the intents of the parties. "Where the language of a contract is unambiguous and not subject to conflicting inferences, construction of the contract is a question of law for the court." *Tulepan v. Roberts,* 2015 WL 235441 at *14. In interpreting a contract, the Court is to give effect to the intention of the parties, and the best evidence of their intent is the contract's

plain language. *Energy Smart Indus.*, 112 F.Supp.3d at 1335.

The parties' rental contract, interpreted by its plain meaning, unambiguously says this: at the time of rental, a renter must either purchase Defendants' optional toll option or decline to purchase the toll option. If the toll option is declined, the renter may avoid toll roads or he/she is liable for the amount of any electronic toll incurred during the rental period, plus a $15 administration fee per toll. The contract does not describe the purpose or nature of the administrative fee or make any representations as to how the administration fee will be used, one way or the other; instead, the fee is described simply as an "administrative fee." Solely using the term "administrative fee," without more, does not restrict how the fee may be used or represent any purpose or nature behind the fee. Simply put, the words "administrative fee," without more, would not lead one to believe that the fee was used for any specific purpose and cannot be found to be akin to a "pass-through charge," as advanced by Plaintiff. *See Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361, 1367 (S.D. Fla. 2007) ("On the contrary, the term 'cost recovery fee' itself implies that the company will keep the money collected as 'recovery' for its costs."); *see also Costa v. Kerzner Int'l Resorts, Inc.*, No. 11-60663, 2011 WL 2519244, at *2 n.2 (S.D. Fla. June 23, 2011) (use of the term "fee" or "service" charge would not lead a reasonable consumer to believe that those funds are a pass-through expense); *Vorst v. TBC Retail Group, Inc.,* 12-cv-80013, 2012 WL 13026643 (S.D. Fla. April 11, 2012) ("Defendant merely refers to the fee as an "oil disposal fee," which implies that Defendant will keep the fee for itself."). Indeed, Plaintiff *himself* concedes that "administrative fee," standing alone, has no meaning other than "fee."[5]

---

[5] During his deposition, Plaintiff was asked what he understood the words "administrative fee" to mean, to which he responded: "I just understand it to mean some type of fee, I suppose everybody has a different definition for it." [ECF No. 111-3 at 53:16-20]. Plaintiff was then asked if there was anything that distinguishes an administrative fee from some other type of fee, to which he responded: "I suppose if you

The three cases relied on by Plaintiff – three cases cited by this Court in its Order on Defendants' motion to dismiss - are of no help to Plaintiff and are now procedurally and factually distinguishable now that discovery has advanced. At the outset, all three involve motions to dismiss and not a developed factual record, like here. Second, the language in the contracts at issue *all* expressly describe the respective fee for a specific purpose to which it was not used, describe the fee as a "pass-through" charge, or expressly state that the fee is calculated in a way that it is not; none of which are present, here.

In *Deere Constr., LLC v. Cemex Constr. Materials Florida, LLC*, 198 F.Supp.3d 1332 (S.D. Fla. 2016), plaintiff brought a breach of contract claim against defendants, global building material companies. *Id*. at 1334. The standard contract provided an agreed upon rate for cement and concrete, but in addition, defendants charged their Florida customers two additional fees: a "fuel surcharge" and an "environmental charge." *Id.* Pursuant to the parties' contract, any fuel surcharge would be calculated from the Federal Energy Information Administration's ("EIA") weekly reporting of diesel fuel pricing for the respective operating region. *Id.* at 1335-36. Moreover, the "environmental charge" was not disclosed anywhere in the parties' contract. *Id.* at 1336. The court denied defendants' motion to dismiss, finding that plaintiff had sufficiently pleaded a breach of contract claim: (1) the contract represented defendant would perform a calculation to arrive at the fuel surcharge, based on the EIA's weekly reporting, but that defendant did not perform any calculation to arrive at the fuel surcharge, let along perform a calculation from the EIA's weekly report; and (2) the 'environmental charge' was not disclosed anywhere in the contract. *Id.* at 1341. Here, there is no dispute that the $15 administrative fee was fully disclosed to Plaintiff before entering into the contract. Moreover, in the subject

---

put the words for exactly what it's for it might make it clear, but the word alone wouldn't really to me mean anything." *Id.* at 53:21-54:2.

contract, Defendants make no representations that they would perform a calculation to arrive at the administrative fee or that it would be calculated based on some type of report or vary by region.

In *Bowe v. Pub. Storage*, No. 1:14-cv-21559-UU, 2014 WL 12029270 (S.D. Fla. July 2, 2014), plaintiff brought a breach of contract claim against defendant arising out of a contract to rent self-storage space. Part of the standard agreement required renters to maintain insurance on the contents of their storage unit. Defendant sold insurance, provided through third-parties, to its customers. *Id.* at *1. Plaintiff alleged that defendant collected a portion of each customer's insurance premium that is paid to the third-parties, but that defendant does not inform its customers that it collects a portion of the insurance. *Id.* at *2. Defendant argued that the breach of contract claim should be dismissed as it failed to allege a violation of a specific provision of the rental contract. The court denied defendant's motion to dismiss the breach of contract claim, finding that plaintiff's complaint:

> Identifies a number of provisions in the rental agreement and the Insurance Addendum that identify the insurance charges as pass-through charges that are not retained by [p]laintiff, and then alleges that [d]efednant breached these provisions by failing to pass-through the full amount that Plaintiff paid for insurance.

*Id.* at *4. Here, Plaintiff has not identified any provisions in the rental contract, and this Court has found none, which constitute a representation to a reasonable consumer that the "administrative fee" was a pass-through charge which Defendants would pay to others. *See Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (Fla. 3d DCA 2000) (concluding that the term "port charge" necessarily constitutes a representation to a reasonable consumer that these are "pass-through" charges which the cruise line will pay to the relevant port authorities))[6]; *see also Costa,* 2011 WL 2519244 (discussing that plaintiff's claim for breach of contract would

---

[6] *See, infra*, n.8.

have survived a motion to dismiss if plaintiff alleged that the "mandatory housekeeping gratuity and utility service fee" went to neither the housekeeping staff nor to pay the utility service fee).

In sum, Defendants fully disclosed the $15 administrative fee to Plaintiff. Plaintiff had the option to purchase Defendants' toll package, but he voluntarily rejected Defendants' toll package. Plaintiff assented to *all* terms of the rental contract – including the fully disclosed requirement of a $15 "administrative fee" on top of any toll charge incurred if the toll package is waived – as evidenced by his signature. The terms of the rental contract do not restrict how Defendants may put the administrative fee to use or specify on what the fee is based. Defendants' conduct was strictly compliant with the terms of the contract, and Plaintiff was charged the precise amount he agreed to under the contract. There can be no breach. Because the only reasonable interpretation of the parties' rental contract permits the $15 administrative fee, summary judgment is GRANTED for Defendants on Count I. *See Vorst*, 2012 WL 13026643 at *3 ("…[p]laintiff agreed to pay the charges, including the oil disposal fee, in exchange for automotive services received. The contract does not contain any provisions regarding how the oil disposal fee is to be distributed by [d]efendant. Plaintiff has thus failed to allege a material breach, and his claim for breach of contract fails."); *see also Sallee v. Dollar Thrifty Automotive Grp., Inc.,* No. 14-cv-250, 2015 WL 1281518, at *6 (N.D. Okla. Mar. 20, 2015) ("Even under the facts alleged by plaintiffs, [defendant] fully disclosed and explained the toll fee provision to which plaintiffs voluntarily agreed. [Defendant's] conduct was strictly compliant with the terms of the contract, and there was no breach."); *Salling v. Budget Rent-A-Car,* No. 09-2160, 2010 WL 2803081, at * 6 (N.D. Ohio July 14, 2010) ("Because the only reasonable interpretation of the rental contract permits the EZFUEL automatic charge to [the] 64-mile rental, the [d]efendants have not breached the agreement and this Court must grant judgment for the

[d]efendants."); *Ramon v. Budget Rent-A-Car System, Inc.*, No. 06-1905, 2007 WL 604795, at *4 (D.N.J. Feb. 20, 2007) ("Plaintiff not only rejected the prepaid fuel option but agreed to the terms of the refueling service charge…Ultimately, [p]laintiff was charged the precise amount he agreed to under the contract for both the rental rate and the refueling service charge. The Court fails to see how this could possible amount to a breach.").

### b. Count II – FDUTPA Violation

Defendants say this Court must grant them summary judgment on Plaintiff's FDUTPA claim because there is nothing deceptive about the term "administrative fee." Further, because Plaintiff did not see or read the alleged misrepresentation, Plaintiff cannot prove causation. Plaintiff, in turn, argues that the "administrative fee" is deceptive in that it is akin to a "pass through charge" and that he is not required to establish causation on an individual basis because causation under FDUTPA is based on an objective standard requiring no individualized proof. Neither party is entirely correct.

FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To prevail on a claim under FDUTPA, Plaintiff must establish: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. General Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (applying Florida law) (citations omitted). Deceptive means a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "This standard requires a showing of '*probable, not possible,* deception' that is 'likely to cause injury to a reasonable relying customer.'" *Id.* (emphasis in original). "To satisfy the first element, Plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the

same circumstances." *Carriuolo*, 823 F.3d at 983-84 (citations omitted). The test is an objective one and does not require a plaintiff to show actual reliance on the deceptive or unfair representation or omission. *See Id.* at 984. "While proof of actual reliance is unnecessary, the first element of a FDUTPA claim is only satisfied by evaluating a reasonable consumer in the same circumstances as plaintiff. The modification of 'acting reasonably' by 'in the same circumstances' indicates a hybrid standard that may be objectively established as to mindset but subjectively established as to context." *Deere Constr. v. Cemex Constr. Materials Florida, LLC*, Case No. 15-24375, 2016 WL 8542540, *3 (S.D. Fla. Dec. 1, 2016); *see also In Re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to World Indices*, 715 F.Supp.2d 1265, 1282 (S.D. Fla. 2010). To prove the causation element of a FDUTPA claim, "a plaintiff need not prove reliance on the allegedly false statement…but rather a plaintiff must simply prove that a reasonably objective person [in the same circumstances as Plaintiff] would have been deceived." *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F.Supp.3d 1283, 1290 (S.D. Fla. Aug. 12, 2015).

Here, Plaintiff has failed to show a deceptive act or unfair practice by Defendants. First, it is clear that Plaintiff's breach of contract claim and FDUPTA claim, in light of the present facts, are inextricably intertwined. With respect to the parties' contract, this Court has already found that Defendants complied with the express terms of the contract and charged Plaintiff in accordance with its terms. The Court has further found that the term "administrative fee," standing alone, is not akin to a "pass-through" charge and a reasonably objective consumer would not be deceived by the term "administrative fee." While Plaintiff argues that the toll notice/FAQs contain deceitful statements with regards to the nature and purpose of the "administrative fee," they cannot form the basis of the FDUPTA claim. While individual reliance

is not required, the purported deception must be *available* to a reasonably objective consumer at the time he/she entered into the transaction. However, a consumer who chose to decline Defendants' optional toll package and incurred a toll, and thereby an administrative fee, would not receive the toll notice/FAQs until well after entering into the transaction and returning his/her rental vehicle; and because the term "administrative fee" does not constitute deception to a reasonably objective consumer, said consumer would have no reason to inquire further into the nature or purpose of the administrative fee at the time he/she entered into the transaction. Because Plaintiff fails to make a showing sufficient to establish the existence of the first element of its FDUPTA claim – a deceptive act or unfair practice – summary judgment on Count II must be granted in favor of Defendants.[7]

Several cases are instructive to this court. In *Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361 (S.D. Fla. 2007), plaintiff alleged that defendant violated FDUTPA by charging a $3.00 "cost recovery fee" in addition to the daily rental rate; and that the fee grossly exceeded the actual cost of vehicle registration and licensing, that was already included in the daily rental rate. *Id.* at 1363-64. In dismissing plaintiff's FDUTPA claim, the *Berry* court first noted that "the simple fact of the [cost recovery fee], and its itemization as a separate charge, is not unfair or deceptive because it was clearly disclosed at the time of the rental." *Id.* at 1367. The court then analyzed the issue of "whether a company violates [FDUTPA] when it represents to a customer that a separate fee is to be paid for a particular purpose, then fails to use the fee for that purpose or retains some portion of the fee for itself." *Id.* The court found that, unlike the cruise

---

[7] However, had Plaintiff been able to satisfy element one, summary judgment would be improper. Because individual reliance is not required, had Plaintiff satisfied element one, causation and damages would have been sufficiently shown by the fact that Plaintiff parted with money for what should have been a "pass through" toll-processing charge, but Defendants kept the money for themselves. *See Vazquez v. Gen. Motors, LLC*, No. 17-22209, 2018 WL 447644, *7 (S.D. Fla. Jan. 16, 2018) (stating that a defendant that argued causation could not be proven because plaintiff did not actually see misrepresentations amounted to requiring actual reliance).

ship "port charges" in *Latman v. Costa Cruise Lines, N.V.,* 758 So.2d 699 (Fla. 3d DCA 2000)[8],

plaintiff failed to allege that the cost recovery fee was analogous to a pass-through charge paid to

a third party, such as a port fee or sales tax. "On the contrary, the term 'cost recovery fee' itself

implies that the company will keep the money collected as 'recovery' for its costs." *Id.*; *see also*

*Costa v. Kerzner Int'l Resorts, Inc.*, No. 11-60663, 2011 WL 2519244, at *2 n.2 (S.D. Fla. June

23, 2011) (use of the term "fee" or "service" charge would not lead a reasonable consumer to

believe that those funds are a pass-through expense).

In *Costa*, plaintiff alleged that defendants engaged in an unfair and deceptive act by

charging a "mandatory housekeeping gratuity" to the housekeeping staff. *Costa,* 2011 WL

2519244 at *1. Plaintiff alleged she was injured because she paid more for her room charge than

the room was worth because the cost included a "gratuity" charge that was not given to the

housekeeping staff despite defendant's representation. *Id.* Defendants argued that plaintiff had

not pleaded a material misrepresentation because its statement regarding the combined

"mandatory housekeeping gratuity and utility service fee" of "up to" various amounts "would not

have provided a reasonable person with any belief as to the amount of charges that would be

distributed to housekeeping staff." *Id.* at *3. The Court agreed with defendants, stating:

> Plaintiff never alleges that some of the Funds went to something other than
> housekeeping staff or the utility service fee…The parties' agreement, however,
> provides that the Funds are to pay a "mandatory housekeeping gratuity and utility
> service fee." Plaintiff, therefore, could not reasonably expect all of the Funds to
> be for a gratuity, and has fallen just short of stating a claim.

*Id.* In so holding, the *Costa* court cited to *Latman* and *Berry*:

---

[8] In *Latman*, plaintiffs brought a FDUTPA claim, alleging a violation when the cruise line charged a "port charge" in excess of the amount that was actually paid out to third parties, and kept a portion for itself. The *Latman* court concluded that the relevant inquiry is how a reasonable consumer would interpret the term "port charge." *Latman,* 758 So.2d at 703. The Court concluded that "the term necessarily constitutes a representation to a reasonable consumer that these are "pass-through" charges which the cruise line will pay to the relevant port authorities (and possibly others)." *Id.* at 704.

This Court in *Berry* granted a motion to dismiss a FDUTPA claim involving a "cost recovery fee" imposed by a rental car company for alleged costs associated with licensing and registering its fleet of vehicles. **The Court concluded that the 'cost recovery fee' in *Berry* implied that the company will keep the money collected**. That practice was not deceptive because there were no allegations that the fee was analogous to a pass-through charge. By contrast, in the present action, Plaintiff alleges that Defendants keep a portion of the housekeeping gratuity for itself. **The use of the term "gratuity" in the present action, as opposed to "fee" or "service charge," would lead a reasonable consumer to believe that those funds are a pass-through to the housekeeping staff, just as the "port charges" in *Latman*.** The fact that Defendants have not disclosed the specific amounts of "housekeeping gratuity" and "utility service fee" does not immunize their conduct under FDUTPA. However, as noted above, Plaintiff has failed to allege that some of the Funds went to neither the housekeeping staff nor toward the utility service fee."

*Id.* at *2 n.2. (internal citations omitted) (emphasis added). In *Vorst*, 2012 WL 13026643, plaintiff brought a FDUTPA claim against defendant. Plaintiff received an oil change from defendant and one of the line items on the invoice paid for by plaintiff was a $3.00 "Oil Disposal Fee." *Id.* at *1. Defendant does not incur any direct oil disposal expenses. *Id.* The court cited to *Berry* and adopted its analysis:

Here, as in *Berry*, the simple fact that Defendant charged an oil disposal fee does not violate the FDUPTA because it was disclosed to Plaintiff at the time the services were provided. With respect to the alleged deception as to the fee's purpose, Plaintiff's conclusory allegations that the oil disposal fee was represented as a pure pass-through expense and that Defendant retains the fee as a profit are insufficient. There is nothing in the invoice or advertisements provided in Plaintiff's complaint which indicates that the $3.00 oil disposal fee was represented to be a pass-through expense, such as a tax paid to the state of Florida. **Defendant merely refers to the fee as an "oil disposal fee," which implies that Defendant will keep the fee for itself.** It is unlikely that a reasonable consumer would be deceived as to the nature and purpose of the oil disposal fee, or the manner in which the fee was distributed. As such, Plaintiff has failed to state a claim under FDUPTA.

*Id.* at 2; *see also Ahrendt v. Condocerts.com, Inc.,* Case No. 17-cv-8418, 2018 WL 2193140, * 4 (dismissing a claim under Illinois' consumer protection statute: "Thus, in Plaintiff's own words, Defendant said nothing to make him believe that the fees it charged corresponded to its actual costs for providing documents, or that it would pass all excess sums to his property manager

instead of simply profiting from providing documents.  The mere fact that Defendant calls its fees "service fees" and "document fees" fails to constitute a deceptive act…).

Here, like in *Berry, Costa* and *Vorst*, Plaintiff is unable to satisfy the first element of his FDUTPA claim. First, it is undisputed that the $15 administrative fee was disclosed prior to entering the rental contract. Next, with respect to the purported deception as to the fee's purpose, the relevant inquiry is not whether Plaintiff actually saw and relied on the deceptive misrepresentation; it is whether "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Carriuolo*, 823 F.3d at 983; *see also Lombardo*, 124 F.Supp.3d at 1290.  As discussed throughout, the term "administrative fee" would not deceive a reasonably objective consumer or imply that the fee was a "pass-through fee;" and it cannot be found to be evidence of deception.[9]  Moreover, because the FAQs were not provided to Plaintiff at the time he entered into the transaction[10] and because a reasonably objective consumer would not be deceived by the term "administrative fee," that reasonably objective consumer would have no reason to inquire further into the nature or purpose of the "administrative fee." While Plaintiff does not have to prove individual reliance on the misrepresentation, the misrepresentation must have been *available* to have been relied on by a reasonably objective consumer when entering into the transaction, and a reasonably objective consumer must have both the *ability* to see the representation and a *basis* to inquire.  *Carriuolo* does not mandate a different result, as argued by Plaintiff.

---

[9] The Court notes that Defendants correctly point out that this Court itself charges certain administrative fees, such as the $50 administrative fee charged to initiate this action.  *See* http://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule (last visited September 28, 2018) ("Administrative fee for filing a civil action, suit, or proceeding in a district court, $50.").  No reasonably objective person would believe that the $50 administrative fee is used entirely to cover the Court's cost of filing a complaint.  Rather, it must be akin to a "service fee" or "cost-of-doing-business" fee.

[10] Here, the toll notice directing Plaintiff to the FAQs was provided in August 2014, well after he entered into the rental contract and the conclusion of the rental period.

In *Carriuolo*, defendant General Motors appealed the district court's order on plaintiff's motion for class certification. *Carriuolo*, 823 F.3d at 981. Plaintiff purchased two vehicles from defendant. *Id.* At the time the vehicles were sold, they contained a sticker representing that the National Highway Traffic Safety Administration ("NHTSA") had assigned the vehicles 5-star ratings in certain categories, when in fact the NHTSA had not assigned *any* safety ratings. *Id.* at 982. Plaintiff brought a FDUTPA claim against defendant. The district court found that the predominance requirement for class certification was satisfied by an essential question common to each class member: whether the sticker provided by defendant constituted a misrepresentation under FDUTPA. *Id.* at 985. Defendant argued, in part, that the liability determination would be too individualized as some of the class members may have seen the stickers before purchasing the vehicles, and some may not have been aware of the sticker's presence. *Id.* The Eleventh Circuit first recognized that defendant's objection did not defeat the district court's determination because a plaintiff asserting a FDUTPA claim need not show reliance on the representation at issue. *Id.* Accordingly, the first FDUTPA element was amenable to class-wide resolution because the factfinder must only determine whether a sticker that inaccurately states a vehicle had received perfect safety ratings in three categories would deceive a reasonably objective observer. *Id.* at 986. The Court continued:

> Because every class member here purchased or leased the same model with the same…sticker attached, it does not matter that there may have been differences among the class members' subjective reliance. Moreover, because the injury is not determined by the plaintiff's subjective reliance on the alleged inaccuracy, causation and damages may also be amenable to class-wide resolution. FDUTPA damages are measured according to "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Thus, the proper question is not how much the erroneous sticker may have reduced the vehicle's perceived value for any individual purchaser or lessee. Rather, damages should reflect the difference between the market value of a 2014 Cadillac CTS with

- 18 -

perfect safety ratings for three standardized categories and the market value of a 2014 Cadillac CTS with no safety ratings.

*Id.* Importantly, the stickers were attached to every one of defendant's 2014 Cadillac CTS. A reasonably objective consumer may not have relied on the sticker before purchasing the vehicle, but the stickers were available to be viewed before purchasing their vehicle. Thus, if element one is satisfied, causation and damages would be satisfied because every reasonably objective consumer who purchased the vehicle would be damaged in the amount representing the difference in value between a 2014 Cadillac CTS with perfect safety ratings and a 2014 Cadillac CTS with no safety ratings, regardless of whether they actually viewed the sticker before purchasing the vehicle.

The same cannot be said here. The Court has already found that the toll notice and FAQs are not part of the parties' contract; that Defendants made no representations as to the nature or purpose of the administrative fee in the contract; and that a reasonably objective consumer would not be deceived by the term "administrative fee" as it is not akin to a pass-through charge. Thus, the only remaining purported deception that could be relied on by Plaintiff is now outside of the parities' rental contract and is found in the language of the toll notice and the FAQs. However, this information would not have been available to a reasonably objective consumer before entering the transaction as it is not provided until after the consumer incurs a toll charge and administrative fee; and a reasonably objective consumer would have no reason to inquire further into the nature or purpose of the administrate fee because the term "administrative fee," without more, is not deceptive.[11]

_____

[11] Notwithstanding the above, the Court notes that the language in the FAQs – an administration fee was charged to cover the costs of processing [Plaintiff's] citation on behalf of the Rental Car Company – does not state that the entirety of the administration fee is used to cover the costs of processing the toll. Plaintiff offers no evidence except his own conclusory assertions that this language would deceive a reasonably objective consumer into believing the processing fee is a "pass through charge" or that the

- 19 -

Consequently, because Plaintiff cannot show a deceptive act or unfair practice, this Court GRANTS summary judgment for Defendants on Count II.

### c. Count III – Breach of Implied Covenant of Good Faith and Fair Dealing

Under Florida law, the duty of good faith "is not an abstract and independent term" and rather "must be anchored to the performance of an express contractual obligation." *Speier-Roche v. Volkswagen Grp. Of Am., Inc.,* No. 14-20107, 2014 WL 1745050, at *4 (S.D. Fla. Apr. 30, 2014) (apply Florida law). "There can be no cause of action for a breach of the implied covenant [of good faith and fair dealing] absent an allegation that an express term of the contract has been breached." *Id.* Because the Court granted summary judgment for Defendants on Plaintiff's breach of contract claim, Count III likewise must fail. Summary judgment is GRANTED for Defendants on Count III. *Id.*; *see also Centurion Air Cargo, Inc. v. UPS,* 420 F.3d 1146, 1152 (11th Cir. 2005) ("Because we held that UPS did not breach the express terms of the Purchase agreement, Florida law precludes a finding of breach of the implied covenant of good faith and fair dealing.").

For the foregoing reasons, after careful consideration it is hereby:

**ORDERED and ADJUDGED** that

1.    Defendants' Motion for Summary Judgment [ECF No. 111] is **GRANTED on all counts**.

2.    The Clerk is directed to enter judgment in favor of Defendants Dollar Thrifty Automotive Group, Inc. (d/b/a Dollar Rent a Car), Dollar Rent A Car, Inc. and DTG Operations,

---

entirety of the fee is used to cover the underlying costs. *See Berry*, 497 F.Supp.2d at 1367 ("However, in *Latman*, it was not the excess amount of the fee that was deceptive, but rather the fact that the company charged what appeared to be a pass-through fee for a third-party but retained a portion for itself."); *see also Vorst,* 2012 WL 13026643 at *2 (rejecting FDUTPA claim regarding an 'oil disposal fee' because allegations that the defendant 'retains the fee as a profit are insufficient' where the defendant did not disclaim that it would recover profit and the plaintiff could imply that defendant would keep the fee for itself).

Inc. and against Plaintiff Marshall Maor, and **CLOSE** this case.

3. The Clerk is directed to **DENY** any pending motions as **MOOT**.

 DONE AND ORDERED in Chambers at Miami, Florida, this 30th day of September, 2018.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Goodman
All Counsel of Record